[886 NE2d 137, 856 NYS2d 515]

In the Matter of ADULT HOME AT ERIE STATION, INC., Respondent, v ASSESSOR AND BOARD OF ASSESSMENT REVIEW OF CITY OF MIDDLETOWN et al., Appellants.

In the Matter of REGIONAL ECONOMIC COMMUNITY ACTION PROGRAM, INC., Appellant, v BONNIE BERNASKI, as Commissioner of Assessment of the City of Middletown, Respondent.

Argued February 5, 2008; decided March 13, 2008

## POINTS OF COUNSEL

*Segel, Goldman, Mazzotta & Siegel, P.C.,* Albany (*Paul J. Goldman* of counsel), and *Alex Smith, Corporation Counsel,* Middletown, for appellants in the first above-entitled proceeding. I. The Appellate Division ignores the requirement that the exemption statutes be narrowly construed. (*People ex rel. Watchtower Bible & Tract Socy. v Haring,* 8 NY2d 350; *Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg,* 79 NY2d 244; *Matter of Presbyterian Residence Ctr. Corp. v Wagner,* 66 AD2d 998, 48 NY2d 885; *Matter of Greer Woodycrest Children's Servs. v Fountain,* 138 AD2d 709, 74 NY2d 749; *Matter of Belle Harbor Home of Sages v Tishelman,* 100 Misc 2d 911, 81 AD2d 886; *Matter of Marino P. Jeantet Residence for Seniors v Commissioner of Fin. of City of N.Y.,* 105 Misc 2d 1080, 86 AD2d 671; *Matter of New York Life Ins. Co. v State Tax Commn.,* 80 AD2d 675; *Matter of Howard v Wyman,* 28 NY2d 434; *Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588.) II. The Appellate Division applied the wrong standard for determining whether an RPTL 420-a exemption is warranted. (*Matter of Belle Harbor Home of Sages v Tishelman,* 100 Misc 2d 911, 81 AD2d 886; *Matter of Greer Woodycrest Children's Servs. v Fountain,* 138 AD2d 709, 74 NY2d 749; *328 Owners Corp. v 330 W. 86 Oaks Corp.,* 8 NY3d 372; *Matter of Schomburg Plaza, Inc. v Austin,* 8 AD3d 489; *Matter of Nassau County Hispanic Found. [Board of Assessors],* 198 AD2d 357; *Sisters of St. Joseph v City of New York,* 49 NY2d 429.) III. The Appellate Division decision conflicts with the New York State Constitution. (*Matter of Roosevelt Raceway v Monaghan,* 9 NY2d 293, 368 US 12; *Sonmax, Inc. v City of New York,* 43 NY2d 253; *Kessel v Purcell,* 119 Misc 2d 449; *People ex rel. Doctor's Hosp., Inc. v Sexton,* 267 App Div 736; *Matter of Greer Woodycrest Children's Servs. v Fountain,* 138 AD2d 709, 74 NY2d 749; *Matter of Belle Harbor Home of Sages v Tishelman,* 100 Misc 2d 911, 81 AD2d 886; *Matter of San Simeon By The Sound v Russell,* 250 AD2d 689; *Cobble Hill Nursing Home v Henry & Warren Corp.,* 196 AD2d 564, 83 NY2d 756.) IV. Petitioner is estopped from asserting that the contract occupants are objects of charity. (*Matter of Meditrust v Fahey,* 226 AD2d 999.) V. Petitioner failed to

exhaust its administrative remedies. (*Watergate II Apts. v Buffalo Sewer Auth.,* 46 NY2d 52; *Matter of Town of Highland v New York State Bd. of Equalization & Assessment,* 211 AD2d 893; *Aldrich v Pattison,* 107 AD2d 258; *Matter of Sterling Estates v Board of Assessors of County of Nassau,* 66 NY2d 122; *W.T. Grant Co. v Srogi,* 52 NY2d 496.)

*Brandt, Steinberg & Lewis, LLP,* New York City (*Richard A. Steinberg* and *Hubert J. Brandt* of counsel), for respondent in the first above-entitled proceeding. I. Appellants mischaracterize respondent's settled purpose and conduct, ignore the factual record and apply inapposite case law in a failed attempt to overturn the decision below. (*Carrier v Salvation Army,* 217 AD2d 420, 88 NY2d 298; *Matter of Belle Harbor Home of Sages v Tishelman,* 100 Misc 2d 911; *Riverdale Country School v City of New York,* 13 AD2d 103, 11 NY2d 741; *Sisters of St. Joseph v City of New York,* 49 NY2d 429; *Matter of Symphony Space v Tishelman,* 60 NY2d 33; *Matter of St. Luke's Hosp. v Boyland,* 12 NY2d 135; *Matter of Greer Woodycrest Children's Servs. v Fountain,* 138 AD2d 709, 74 NY2d 749; *Matter of Presbyterian Residence Ctr. Corp. v Wagner,* 66 AD2d 998, 48 NY2d 885; *Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 62 NY2d 539; *Matter of Valeria Home v Cook,* 22 NY2d 388.) II. An RPTL article 7 proceeding is a de novo trial; petitioner is not limited to its proof made before the Assessor and Board of Assessment Review of the City of Middletown. (*People ex rel. Jamaica Water Supply Co. v State Bd. of Tax Commrs.,* 196 NY 39; *People ex rel. 4 Park Ave. Corp. v Lilly,* 265 App Div 68; *Matter of Katz Buffalo Realty v Anderson,* 25 AD2d 809; *W.T. Grant Co. v Srogi,* 52 NY2d 496; *Matter of Sterling Estates v Board of Assessors of County of Nassau,* 66 NY2d 122; *Matter of Hyacinthe v Glaser,* 104 AD2d 651.)

*J. Wade Beltramo, Deputy General Counsel, New York State Conference of Mayors and Municipal Officials,* Albany, for New York State Conference of Mayors and Municipal Officials, amicus curiae in the first above-entitled proceeding. I. The Legislature has clearly, unambiguously, and explicitly expressed its intention that not-for-profit exemptions claims under RPTL 420-a must be narrowly interpreted and applied. (*People ex rel. Unity Cong. Socy. of City of N.Y. v Mills,* 189 Misc 774; *People ex rel. Andrews v Cameron,* 140 App Div 76, 200 NY 585; *People ex rel. Mizpah Lodge No. 518 of Ind. Order of Odd Fellows v Burke,* 228 NY 245; *People ex rel. Delta Kappa Epsilon Socy. v Lawler,* 74 App Div 553, 179 NY 535; *People ex rel. Watchtower Bible &*

*Tract Socy. v Haring,* 8 NY2d 350; *Matter of Faculty-Student Assn. of Harpur Coll. v Dawson,* 57 Misc 2d 112.) II. The courts' constantly expansive reading of New York's tax-exemption statutes has eroded the local government tax base to such a degree that any further expansion of the State's tax-exempt laws will threaten the financial solvency of many of New York's local governments; consequently, sound public policy demands that the terms "charitable" and "exclusively," as used in RPTL 420-a, must be interpreted and applied narrowly. III. An expansive reading of RPTL 420-a puts the State of New York at an economically competitive disadvantage to other states, and thus the statute should be narrowly construed.

*Cadwalader, Wickersham & Taft LLP,* New York City (*Peter G. Bergmann, Terence F. Gilheany* and *Brian T. McGovern* of counsel), for New York Association of Homes and Services for the Aging, amicus curiae in the first above-entitled proceeding. I. This Court should affirm the Appellate Division's order, recognizing that respondent, a not-for-profit adult home, is used exclusively (i.e., primarily) for charitable purposes pursuant to RPTL 420-a as that statute has been read and applied by this Court in *Mohonk Trust v Board of Assessors of Town of Gardiner* (47 NY2d 476 [1979]) and *Matter of Symphony Space v Tishelman* (60 NY2d 33 [1983]). (*Matter of Belle Harbor Home of Sages v Tishelman,* 100 Misc 2d 911, 81 AD2d 886, 55 NY2d 602; *Matter of Marino P. Jeantet Residence for Seniors v Commissioner of Fin. of City of N.Y.,* 105 Misc 2d 1080, 86 AD2d 671; *Matter of Adirondack Land Trust v Town of Putnam Assessor,* 203 AD2d 861, 84 NY2d 809; *Matter of Scenic Hudson Land Trust v Sarvis,* 234 AD2d 301; *Matter of Farm Sanctuary v Patton,* 221 AD2d 67; *Matter of Canton Human Servs. Initiatives, Inc. v Town of Canton,* 4 Misc 3d 413; *Matter of Stuyvesant Sq. Thrift Shop v Tax Commn. of City of N.Y.,* 54 NY2d 735; *Sisters of St. Joseph v City of New York,* 49 NY2d 429; *Matter of Association of Bar of City of N.Y. v Lewisohn,* 34 NY2d 143.) II. The legislative history of RPTL 420-a and 422 reinforces the conclusion that the charitable exemption contained in RPTL 420-a broadly includes adult homes. (*Matter of Symphony Space v Tishelman,* 60 NY2d 33; *Mohonk Trust v Board of Assessors of Town of Gardiner,* 47 NY2d 476.) III. An adult home is not a mere "apartment complex" for senior citizens but a long-term care provider addressing the special needs of the elderly. (*Matter of Presbyterian Residence Ctr. Corp. v Wagner,* 66 AD2d 998, 48 NY2d 885; *Matter of Greer Woodycrest Children's Servs. v Fountain,* 138 AD2d 709, 74 NY2d 749; *Matter of Regional Economic Community Action Program, Inc. v Bernaski,* 40 AD3d 1000.)

*Wilson, Elser, Moskowitz, Edelman & Dicker, LLP,* Albany *(Michael G. Weisberg* of counsel), for Healthcare Association of New York State, Inc., amicus curiae in the first above-entitled proceeding. I. The Adult Home at Erie Station, Inc. was organized and conducted for a charitable purpose. (*Mohonk Trust v Board of Assessors of Town of Gardiner,* 47 NY2d 476; *Matter of American Socy. for Prevention of Cruelty to Animals v Tax Commn. of City of N.Y.,* 113 Misc 2d 427; *Sherman v Richmond Hose Co. No. 2,* 230 NY 462; *Matter of Hamilton,* 270 App Div 634, 296 NY 578; *Matter of Farm Sanctuary v Patton,* 221 AD2d 67; *Matter of Marino P. Jeantet Residence for Seniors v Commissioner of Fin. of City of N.Y.,* 105 Misc 2d 1080, 86 AD2d 671; *Matter of Belle Harbor Home of Sages v Tishelman,* 100 Misc 2d 911, 81 AD2d 886, 55 NY2d 602; *Tucker v Toia,* 43 NY2d 1; *Matter of Lee v Smith,* 43 NY2d 453; *Olmstead v L. C.,* 527 US 581.) II. The Adult Home at Erie Station, Inc. was used "exclusively" for charitable purposes. (*Matter of Symphony Space v Tishelman,* 60 NY2d 33; *Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg,* 79 NY2d 244; *People ex rel. Doctor's Hosp., Inc. v Sexton,* 267 App Div 736, 295 NY 553; *Matter of Nevins,* 16 Misc 2d 425; *Butterworth v Keeler,* 219 NY 446; *American-Russian Aid Assn. v City of Glen Cove,* 41 Misc 2d 622, 23 AD2d 966; *Matter of Belle Harbor Home of Sages v Tishelman,* 100 Misc 2d 911, 81 AD2d 886; *Matter of Nassau County Hispanic Found. [Board of Assessors],* 198 AD2d 357; *Matter of Visiting Nurse Serv. of N.Y. Home Care v New York State Dept. of Health,* 5 NY3d 499; *Matter of Aliessa v Novello,* 96 NY2d 418.)

*James G. Sweeney, P.C.,* Goshen (*James G. Sweeney, Barbara J. Harris* and *Max Wilde* of counsel), for appellant in the second above-entitled proceeding. I. The notion of relief from real property taxation for charitable organizations is firmly embedded in the jurisprudence of the state and nation. The methodology used by the courts below works against that jurisprudence. (*Hollis v Drew Theol. Seminary,* 95 NY 166; *Amherst Coll. v Ritch,* 151 NY 282; *Matter of Huntington,* 168 NY 399; *Walz v Tax Commn. of City of N.Y.,* 24 NY2d 30, 397 US 664.) II. The correct test for deciding whether or not Regional Economic Community Action Program, Inc. is entitled to the RPTL 420-a (1) (a) exemption is the "reasonably incident" test of *Matter of St. Luke's Hosp. v Boyland* (12 NY2d 135 [1962]). The courts below failed to apply this test. (*Matter of Miriam Osborn Mem. Home Assn. v Assessor of City of Rye,* 275 AD2d 714; *Matter of Symphony Space v Tishelman,* 60 NY2d 33; *Matter of Regional*

*Economic Community Action Program v Ritter,* 270 AD2d 492; *Matter of Pets Alive v Wanat,* 288 AD2d 386; *Matter of St. Luke's Hosp. v Boyland,* 15 AD2d 776; *People ex rel. Clarkson Mem. Coll. of Tech. v Haggett,* 274 App Div 732, 300 NY 595; *People ex rel. Watchtower Bible & Tract Socy. v Haring,* 8 NY2d 350; *Gospel Volunteers v Village of Speculator,* 33 AD2d 407, 29 NY2d 622; *Matter of Shrine of Our Lady of Martyrs of Auriesville v Board of Assessors of Town of Glen,* 40 AD2d 75, 33 NY2d 713; *Matter of American Mgt. Assns. v Assessor of Town of Madison,* 63 AD2d 1102.) III. The courts below applied a wrong legal standard in denying the exemption. (*Matter of St. Luke's Hosp. v Boyland,* 12 NY2d 135; *People ex rel. Watchtower Bible & Tract Socy. v Haring,* 8 NY2d 350; *Gospel Volunteers v Village of Speculator,* 33 AD2d 407, 29 NY2d 622; *Matter of Salvation Army v Town of Ellicott Bd. of Assessment Review,* 100 AD2d 361; *American-Russian Aid Assn. v City of Glen Cove,* 41 Misc 2d 622, 23 AD2d 966; *People ex rel. Clarkson Mem. Coll. of Tech. v Haggett,* 274 App Div 732, 300 NY 595; *Butterworth v Keeler,* 219 NY 446.)

*Segel, Goldman, Mazzotta & Siegel, P.C.,* Albany (*Paul J. Goldman* of counsel), and *Alex Smith, Corporation Counsel,* Middletown, for respondent in the second above-entitled proceeding. I. The properties are not exempt from taxation. (*Matter of Greer Woodycrest Children's Servs. v Fountain,* 138 AD2d 709, 74 NY2d 749; *Matter of Presbyterian Residence Ctr. Corp. v Wagner,* 66 AD2d 998, 48 NY2d 885; *People ex rel. Watchtower Bible & Tract Socy. v Haring,* 8 NY2d 350; *Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg,* 79 NY2d 244; *Matter of Miriam Osborn Mem. Home Assn. v Assessor of City of Rye,* 275 AD2d 714; *Matter of Symphony Space v Tishelman,* 60 NY2d 33; *Matter of Association of Bar of City of N.Y. v Lewisohn,* 34 NY2d 143; *Matter of Belle Harbor Home of Sages v Tishelman,* 100 Misc 2d 911, 81 AD2d 886; *Catlin v Trustees of Trinity Coll.,* 113 NY 133; *Buffalo City Cemetery v City of Buffalo,* 46 NY 506.) II. *Matter of Nassau County Hispanic Found. (Board of Assessors)* (198 AD2d 357 [1993]) is valid precedent. (*Matter of United Church Residences of Fredonia N.Y., Inc. v Newell,* 43 AD3d 1403.) III. The reasonably incident test under *Matter of St. Luke's Hosp. v Boyland* (12 NY2d 135 [1962]) does not support the petition. (*New York & Presbyt. Hosp. v Progressive Cas. Ins. Co.,* 5 AD3d 568; *People ex rel. Thomas S. Clarkson Mem. Coll. of Tech. v Haggett,* 300 NY 595; *Matter of Presbyterian Residence Ctr. Corp. v Wagner,* 66 AD2d 998, 48 NY2d 885; *Matter of Greer Woodycrest Children's*

*Servs. v Fountain,* 138 AD2d 709, 74 NY2d 749; *Miriam Osborn Mem. Home Assn. v Assessor of City of Rye,* 14 Misc 3d 1209[A], 2006 NY Slip Op 52461[U]; *Matter of Belle Harbor Home of Sages v Tishelman,* 100 Misc 2d 911, 81 AD2d 886; *Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg,* 79 NY2d 244; *Matter of Beth Israel Hosp. Hous. Co. [Catherwood],* 35 AD2d 397; *Gospel Volunteers v Village of Speculator,* 33 AD2d 407.) IV. The precedent of this Court confirms that an exemption is not warranted. (*Matter of Presbyterian Residence Ctr. Corp. v Wagner,* 48 NY2d 885; *Matter of Greer Woodycrest Children's Servs. v Fountain,* 74 NY2d 749; *Matter of Adult Home at Erie Sta., Inc. v Assessor & Bd. of Assessment Review of City of Middletown,* 36 AD3d 699, 8 NY3d 814.)

**OPINION OF THE COURT**

Sмітн, J.

Two owners of property in the City of Middletown claim that their property is used for "charitable" purposes and so is exempt from real property tax. We hold that both property owners are correct.

### Facts and Procedural History

The petitioners in these cases are Elant at Erie Station, Inc., formerly known as Adult Home at Erie Station, Inc. (AHESI), and Regional Economic Community Action Program, Inc. (RECAP).

AHESI

AHESI's property is used for the operation of an "adult home," defined by Social Services Law § 2 (25) as "an adult care facility established and operated for the purpose of providing long-term residential care, room, board, housekeeping, personal care . . . and supervision to five or more adults unrelated to the operator." The home has a rate schedule, containing what both sides' experts found to be "market" rates, but only about 10% of its residents pay those rates. Something over half the residents are eligible for Supplemental Security Income (SSI); their care is paid for, at a reduced rate, by the Social Security Administration. The remaining 30-plus percent of the residents, referred to by AHESI as "contract occupants," pay for their own care, but are unable to afford the full market rate; they pay reduced fees determined by their assets and income. AHESI accepts all applicants qualified by age and medical condition, and has never turned away a would-be resident because of inability to pay the market rate.

The City rejected AHESI's application for exemption from real property tax, and the Board of Assessment Review upheld the City's determination. AHESI then sought judicial review of its assessments under article 7 of the Real Property Tax Law. Supreme Court decided, after an evidentiary hearing, that the property was not exempt. The Appellate Division reversed and upheld AHESI's claim to an exemption. We granted leave to appeal, and now affirm the Appellate Division's order.

RECAP

RECAP is a social work organization, devoted to combating homelessness, substance abuse and other social ills among low-income people in the Middletown area. RECAP owns homes in which participants in its "Community Re-Entry Program" live. They live there only for the "transitional" period until they have completed the program, though the transition is often lengthy. The City claims that almost half the residents have been in the homes for three years or more, but there is nothing in the record to show that any of the residents is not a bona fide program participant. RECAP receives rent from the properties comparable to rents charged by private landlords; the rent is paid partly by government agencies, and partly by the tenants themselves.

The City denied RECAP's applications for tax exemptions, and RECAP brought a CPLR article 78 proceeding seeking to annul that decision. Supreme Court denied relief, and the Appellate Division affirmed. We granted leave to appeal, and now reverse.

Discussion

Real Property Tax Law § 420-a (1) (a) says:

> "Real property owned by a corporation or association organized or conducted exclusively for religious, charitable, hospital, educational, or moral or mental improvement of men, women or children purposes, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes either by the owning corporation or association or by another such corporation or association as hereinafter provided shall be exempt from taxation as provided in this section."

This exemption is inapplicable when an officer, member or employee of the property owner receives a "pecuniary profit"

from the activity involved, or when the organization is "a guise or pretense for . . . making any other pecuniary profit" (RPTL 420-a [1] [b]). The City does not claim that section 420-a (1) (b)'s exception to the exemptions applies here. Nor does the City dispute that both AHESI and RECAP are "organized or conducted exclusively for . . . charitable . . . purposes" within the meaning of RPTL 420-a (1) (a). The only question is whether their properties are "used exclusively for carrying out thereupon one or more of such purposes." We conclude that they are.

I

The City treats AHESI as a provider of housing to the elderly, and says that its property is taxable under our decisions in *Matter of Greer Woodycrest Children's Servs. v Fountain* (74 NY2d 749 [1989]) and *Matter of Presbyterian Residence Ctr. Corp. v Wagner* (48 NY2d 885 [1979], *affg for reasons stated below* 66 AD2d 998 [4th Dept 1978]). AHESI insists that it provides its residents not with "mere housing" but also with "a program of personal care." We regard this difference in characterizations as unimportant. Assuming that AHESI's property is used essentially for housing, the property is still tax exempt. *Greer Woodycrest* and *Presbyterian* hold that renting homes to elderly people who are not poor is not a "charitable" activity, but AHESI's property is used to provide housing to poor people at below market rates. This is plainly a "charitable" purpose (*see Matter of Belle Harbor Home of Sages v Tishelman*, 100 Misc 2d 911 [Sup Ct, Queens County 1979], *affd on op below* 81 AD2d 886 [2d Dept 1981]).

Although RPTL 420-a (1) (a) says that exempt property must be "used exclusively" for charitable or other exempt purposes, we have held that the word "exclusively" is not to be read literally (*Matter of Symphony Space v Tishelman*, 60 NY2d 33, 38 [1983] ["In determining whether the real property of a corporation is used exclusively for the exempt purpose, the word 'exclusive' has been held to connote 'principal' or 'primary' "]). Thus, the City does not argue that AHESI should lose its tax exemption solely because 10% of its residents—those who pay market rates—seem not to be receiving charity. The main dispute between the parties is whether the other 90% of the residents are poor enough to make AHESI's activity "charitable." The City does not dispute that the SSI recipients are poor enough (*see Belle Harbor*, 100 Misc 2d at 913 [property used primarily for charitable purposes where 90% of residents

"have government benefits as their only source of income"]), but says that AHESI's contract occupants—between 30% and 40% of the residents—are not.

We disagree. The record shows that, in computing rents charged to contract occupants, AHESI required them to pay all of their assets that exceeded the $2,000 maximum for SSI recipients, and also required them to pay all of their income with the exception of a $50 allowance for incidentals and an additional allowance for medical bills and medical premiums. People whose expenses for housing and medical care leave them with no more than $2,000 in assets and $50 in disposable income are poor by any reasonable definition. We see no basis, in precedent or logic, for the City's proposed rule that only SSI recipients are poor enough to be objects of charity. We thus conclude that the Appellate Division correctly held AHESI's property to be tax exempt.

## II

█ RECAP, unlike AHESI, receives market rents for its properties. Relying on *Greer Woodycrest* and *Presbyterian*, the City argues, and the courts below held, that this fact defeats RECAP's claim to a tax exemption—that a property owner who receives the same rent as a commercial landlord cannot be using its property for charitable purposes. We find this analysis to be flawed.

RECAP's charitable purpose is different from AHESI's, and from the purposes at issue in *Greer Woodycrest* and *Presbyterian*. While AHESI may be viewed as supplying housing to the impoverished elderly, and the property owners in *Greer Woodycrest* and *Presbyterian* as supplying housing to the non-impoverished elderly, RECAP is engaged in social work, helping homeless people, alcoholics, drug addicts and other afflicted members of society to become productive and useful citizens. This is undoubtedly a charitable activity, and the City does not claim it is not.

The City's argument is that RECAP's social work is not, for the most part, done on the properties in question—these properties are simply residences. RECAP answers that the residences are made available only to participants in its program, and only while they are participating; it says that providing decent and affordable housing to participants furthers the program's goals. RECAP says that this case is controlled by *Matter of St. Luke's Hosp. v Boyland* (12 NY2d 135 [1962]). We agree.

The issue in *St. Luke's* was whether certain apartment houses were being used "exclusively for . . . hospital . . . purposes" within the meaning of the predecessor statute to RPTL 420-a (1) (a). The apartments were rented to hospital employees and their immediate families, and we held that this was a "hospital" use within the meaning of the statute. The test, we said, is whether the apartments "are devoted to a use which 'is reasonably incident' to the major purpose of the hospital" (12 NY2d at 143, quoting *People ex rel. Watchtower Bible & Tract Socy. v Haring*, 8 NY2d 350, 358 [1960]). We noted that it was customary for hospitals to provide living accommodations for at least some employees, and that there was evidence that some nurses and technicians would not have accepted, or would have left, their employment with the hospital if living quarters had not been provided.

The residential use of RECAP's property is no less "reasonably incident" to RECAP's purposes than the use of the apartment buildings in *St. Luke's* was to the hospital's. It can hardly be questioned that providing an acceptable place for people to live while they participate in social work programs advances the goal of keeping them in the programs and thus of helping them overcome their troubles.

■ ■ The courts below erred in concluding that, because RECAP receives fair market value for its properties, the properties are not distinguishable from a commercial apartment complex. The distinction is that apartments in commercial complexes are not provided solely to people struggling against alcoholism, drug addiction and the like on condition that they participate in programs designed to help them. That these people (or the government agencies that support them) pay market rents, and that RECAP may even benefit economically from its rental income, does not change the result. The issue is not whether RECAP benefits, but whether the property is "used exclusively" for RECAP's charitable purposes. RECAP could lose its exemption under RPTL 420-a (1) (b) if the economic benefit went to its officers or employees personally, but an economic benefit to a charitable organization does not by itself extinguish a tax exemption. The question is how the property is used, not whether it is profitable. *Matter of Nassau County Hispanic Found. (Board of Assessors)* (198 AD2d 357 [2d Dept 1993]), which held otherwise, was incorrectly decided.

## III

Accordingly, the order of the Appellate Division in the *AHESI* matter should be affirmed, with costs. The order of the Appellate Division in the *RECAP* matter should be reversed, with costs, the petition granted and the Commissioner of Assessment of the City of Middletown directed to grant RECAP a real property tax exemption for the tax year 2004/2005.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

In *Matter of Adult Home at Erie Sta., Inc. v Assessor & Bd. of Assessment Review of City of Middletown*: Order affirmed, with costs.

In *Matter of Regional Economic Community Action Program, Inc. v Bernaski*: Order reversed, etc.