■ In the Matter of ASSOCIATION FOR NEIGHBORHOOD REHABILITATION, INC., Respondent, v BOARD OF ASSESSORS OF THE

---

CITY OF OGDENSBURG et al., Appellants. (And Nine Other Related Proceedings.) [917 NYS2d 734]—

Lahtinen, J. Appeals from those parts of an order and judgment of the Supreme Court (Demarest, J.), entered August 25, 2009 in St. Lawrence County, which granted seven of petitioner's applications, in 10 proceedings pursuant to RPTL article 7, to declare certain real property tax exempt.

Petitioner is a not-for-profit corporation that has as one of its primary missions to provide housing to people who are at high risk of becoming homeless, including, among others, the mentally infirm or disabled, people who are drug or alcohol dependent, domestic violence victims and low-income individuals. As part of this mission, petitioner renovates properties, some of which it then rents to individuals in accordance with criteria established by various governmental entities. Funding for the properties and the programs does not come uniformly from one governmental aid program and, thus, the properties are subject to varying requirements. Most units where a tenant is unable to pay the full rent are subsidized, resulting in petitioner often receiving amounts at or near market rent for the region.

Petitioner applied to have 11 of its properties in the City of Ogdensburg, St. Lawrence County exempted from real property taxes pursuant to RPTL 420-a. Its applications were denied and it then commenced this litigation, which eventually resulted in a nonjury trial conducted over several days. At trial, petitioner withdrew its petition as to one of its properties, which was a vacant lot. As to the remaining 10 properties, Supreme Court determined that petitioner had met its burden regarding eight of the properties. Respondents appeal and challenge Supreme Court's determination as to seven of the eight properties that the court found exempt from real property taxation.

An entity seeking an exemption from real property taxes bears

the burden of proof (*see Matter of World Buddhist Ch'An Jing Ctr., Inc. v Schoeberl*, 45 AD3d 947, 948 [2007]). "[W]hile exemption statutes should be construed strictly against the taxpayer seeking the benefit of the exemption, an interpretation so literal and narrow that it defeats the exemption's settled purpose is to be avoided" (*Matter of Association of Bar of City of N.Y. v Lewisohn*, 34 NY2d 143, 153 [1974]; *see Matter of Congregation Machne Chaim v Kwak*, 3 AD3d 708, 710 [2004]; *Matter of Farm Sanctuary v Patton*, 221 AD2d 67, 68 [1996]). Where, as here, conflicting proof is presented, we accord deference to the trial court's credibility determinations (*see generally Matter of Regency Realty Assoc., LLC v Board of Assessment Review of the Town of Malta*, 75 AD3d 950, 951 [2010]).

Respondents argue that Supreme Court erred in determining that petitioner's properties were used exclusively for a charitable purpose. While the statute speaks in terms of exclusive use, "it has long been clear that the statute's 'used exclusively' language should be understood to mean 'used principally' " (*Matter of Lackawanna Community Dev. Corp. v Krakowski*, 12 NY3d 578, 581 n [2009]). Thus, a charitable organization that provides housing to the indigent at below market rate is allowed an exemption even though a small percentage of its tenants can pay market rents (*see Matter of Adult Home at Erie Sta., Inc. v Assessor & Bd. of Assessment Review of City of Middletown*, 10 NY3d 205, 214-215 [2008]). The fact that government subsidies raise the amount received for low-income housing to an equivalent of market rates does not necessarily defeat the exemption (*see Matter of United Church Residences of Fredonia, N.Y., Inc. v Newell*, 10 NY3d 922, 923 [2008]). Moreover, an entity engaged in "helping homeless people, alcoholics, drug addicts and other afflicted members of society" that requires tenants to participate in programs that address these problems can obtain an exemption even though most tenants pay market rent (*Matter of Adult Home at Erie Sta., Inc. v Assessor & Bd. of Assessment Review of City of Middletown*, 10 NY3d at 215-216).

Before addressing the specific properties, we note some overarching facts set forth in the record. Petitioner is the primary provider of units for individuals and families facing homelessness in St. Lawrence County. The need for such services was described as very significant, in part because the County contains two hospitals serving those afflicted with mental illness and other maladies that are often contributing factors to homelessness. While indigency is certainly a major cause of homelessness, the evidence established that there are

other causes—often overlapping—including mental health problems, substance abuse and domestic violence. Petitioner works in conjunction with various governmental entities, caseworkers are located at some of the properties, caseworkers visit the tenants and extensive referral assistance to other governmental agencies is provided. Petitioner also operates the Homelessness Intervention Program, which is partially funded through the State Office of Temporary Disability Assistance, and is a program to which other agencies within the County refer individuals facing homelessness. All tenants must meet screening criteria pertinent to potential homelessness, and petitioner monitors tenants periodically. Petitioner provides a food pantry so tenants have access to food until they can obtain assistance through the Department of Social Services (hereinafter DSS).

Three of the properties are used exclusively for tenants in petitioner's Single Room Occupancy (hereinafter SRO) program. There were 39 rooms available under the SRO program in petitioner's buildings in the City of Ogdensburg. SRO tenants have a single sleeping room, with access to a communal kitchen, bathroom and social area. Caseworkers from the Mentally Ill Chemically Addicted program—which is funded through the office of Mental Health—are available at SRO residences as well as an SRO caseworker. Various agencies refer individuals to petitioner for housing under the SRO program, with about 250 people serviced during a year. Individuals go through a screening process to ensure they meet criteria for being at a high risk for homelessness. Rent amounts are based on the DSS shelter allowance and capped at 30% of the tenants' income. The typical length of stay was three to four months and there was testimony that, in addition to being afflicted with other problems causing homelessness, most tenants in SRO housing were also low income. The record amply supports Supreme Court's determination that the SRO properties were entitled to an exemption.

Next, we consider the property referred to as Gaslight Village, where homeless families (rather than homeless individuals) were housed by petitioner. The record did not establish as high a level of poverty at Gaslight Village as at the SRO properties and, while programs to address the tenants' problems that contributed to their homelessness were made available, the programs were not mandatory as in *Matter of Adult Home at Erie Sta., Inc. v Assessor & Bd. of Assessment Review of City of Middletown* (10 NY3d at 215-216). These facts alone are not necessarily dispositive since all germane circumstances must be

considered in light of the stated charitable goal. For example, since homelessness results from a confluence of factors, the fact that sometimes an at-risk person can afford housing may not, by itself, adequately address the person's problem. Moreover, while mandatory participation in programs designed to address the underlying causes of homelessness is certainly an easier case for an exemption, a property is not necessarily ineligible for an exemption where it clearly serves a narrowly tailored at-risk population by successfully integrating a host of optional programs.

Gaslight Village was funded by the New York State Homeless Housing and Assistance Corporation, a public benefit corporation that administers the Homeless Housing and Assistance Program and works in conjunction with the State Office of Temporary and Disability Assistance. Referrals of tenants typically come from DSS or similar agencies and only families who meet the requirement of being homeless or at risk of homelessness are accepted. No one is turned away for inability to pay. There are no other similar housing projects in St. Lawrence County for homeless families. Like SRO housing, rent is set by DSS allowances, with a maximum of 30% of income. The length of stays at Gaslight Village are longer than the SRO program, with average periods of three to four years. There was testimony that many of the families at Gaslight Village often come from "intergenerational poverty" with "multiple barriers to their self-sufficiency" and, significantly, that simply supplying them with a rent subsidy for living at another location would not adequately address their underlying problems; however, those problems can be addressed at Gaslight Village through the various programs made readily available to tenants by petitioner in conjunction with other agencies. While the issue is closer for the property used to assist families as opposed to individuals, we are unpersuaded that Supreme Court erred in its determination.

The remaining properties do not require lengthy discussion. The 231 Lake Street property has both SRO housing for individuals and family housing similar to Gaslight Village and, thus, was properly found exempt. The final two properties in dispute are petitioner's offices, from which it runs its charitable operations, and a warehouse with maintenance equipment used for the properties as well as storage for personal belongings left by tenants. Since these properties are used primarily to support petitioner's charitable activities, they were properly determined to be exempt.

Mercure, J.P., Rose, Malone Jr. and Stein, JJ., concur. Ordered

that the order and judgment is affirmed, without costs. **[Prior Case History: 24 Misc 3d 1206(A), 2009 NY Slip Op 51289(U).]**