█ In the Matter of PINE HARBOUR, INC., Appellant, v BRIAN DOWLING, as Assessor of the City of Plattsburgh, et al., Respondents. [932 NYS2d 239]—

Egan Jr., J.

Petitioner operates an assisted living facility in the City of Plattsburgh, Clinton County. In 2006, the Internal Revenue Service granted petitioner tax exempt status pursuant to Internal Revenue Code (26 USC) § 501 (c) (3) and, for tax years 2006 and 2007, respondent Brian Dowling, the Assessor for respondent City of Plattsburgh, deemed petitioner's property to be wholly exempt from taxation. When petitioner applied to renew its tax exempt status for 2008, however, Dowling requested additional information including, among other things, petitioner's rate schedules and audited financial statements. Ultimately, the Board of Assessment Review continued petitioner's tax exempt status for 2008.

---

* Plaintiff has not challenged the dismissal of its claims sounding in promissory estoppel and quantum meruit.

In January 2009, petitioner again applied to continue its tax exempt status for the upcoming year. Dowling denied the requested exemption and petitioner, in turn, filed a complaint with the Board. Following a hearing, the Board denied petitioner's application, prompting petitioner to commence this proceeding pursuant to RPTL article 7 to challenge the Board's determination. Respondents answered and sought dismissal of the petition under CPLR 3211 and 3212, and petitioner cross-moved for summary judgment. Supreme Court, among other things, granted respondents' motion for summary judgment dismissing the petition and this appeal ensued.

We affirm. To qualify for tax exempt status under RPTL 420-a (1) (a),[1] "(1) the entity must be organized exclusively for purposes enumerated in the statute, (2) the property in question must be used primarily for the furtherance of such purposes, . . . (3) no pecuniary profit, apart from reasonable compensation, may inure to the benefit of any officers, members, or employees, and (4) the entity may not be simply used as a guise for profit-making operations" (*Matter of Miriam Osborn Mem. Home Assn. v Assessor of City of Rye*, 275 AD2d 714, 715 [2000]; *accord Matter of Eternal Flame of Hope Ministries, Inc. v King*, 76 AD3d 775, 777 [2010], *affd* 16 NY3d 778 [2011]; *Matter of TAP, Inc. v Dimitriadis*, 49 AD3d 947, 947-948 [2008]). Although the party invoking the exemption normally bears the burden of proof, where, as here, "a municipality seeks to withdraw a previously granted tax exemption, the municipality bears the burden of proving that the . . . property is subject to taxation" (*Matter of Lackawanna Community Dev. Corp. v Krakowski*, 12 NY3d 578, 581 [2009] [internal quotation marks and citation omitted]; *see Matter of New York Botanical Garden v Assessors of Town of Washington*, 55 NY2d 328, 334 [1982]; *Matter of Lake Forest Senior Living Community, Inc. v Assessor of the City of Plattsburgh*, 72 AD3d 1302, 1304 [2010])—a burden that may be discharged by establishing, for example, that "the tax exemption was erroneously awarded in the first instance" (*Matter of Lake Forest Senior Living Community, Inc. v Assessor of the City of Plattsburgh*, 72 AD3d at 1304 [internal quotation marks and citation omitted]).

The crux of petitioner's argument on appeal is that respondents erred in withdrawing the underlying exemption because

---

1. To the extent that petitioner now claims that it utilizes its property for a "benevolent" purpose and, therefore, should be afforded tax exempt status under RPTL 420-b (1) (a) as well, we need note only that both petitioner's renewal application and the underlying petition are limited to requesting the exemption set forth in RPTL 420-a (1) (a).

the record as a whole demonstrates that petitioner is organized and in fact utilizes its property "exclusively" for "charitable" purposes or to foster the "moral or mental improvement of men, women or children,"[2] thereby satisfying the requirements of RPTL 420-a (1) (a). In support of this claim, petitioner points to the growing demand for assisted living centers, argues that it is fulfilling a societal need by providing residential and health-related services to aging baby boomers and analogizes its assertedly altruistic mission to that of the YMCA and YWCA, the Boy Scouts and Girl Scouts and organizations dedicated to the performing arts or the preservation of open space. While petitioner no doubt offers a much-needed service and fills a particular niche in the market, it simply fails to provide the broad-based public benefit common to those cases where the statutory exemption has been granted based upon the "moral or mental improvement" clause contained therein (*see e.g. Matter of Symphony Space v Tishelman*, 60 NY2d 33, 39 [1983]; *Matter of New York Botanical Garden v Assessors of Town of Washington*, 55 NY2d at 336-337; *Mohonk Trust v Board of Assessors of Town of Gardiner*, 47 NY2d 476, 484-485 [1979]).

Further, the case law makes clear that providing retirement housing to senior citizens who are not in fact poor does not constitute a charitable activity (*see Matter of Greer Woodycrest Children's Servs. v Fountain*, 74 NY2d 749, 751 [1989]; *Matter of Quail Summit, Inc. v Town of Canandaigua*, 55 AD3d 1295, 1296 [2008], *lv denied* 11 NY3d 716 [2009]; *Matter of Presbyterian Residence Ctr. Corp. v Wagner*, 66 AD2d 998, 999 [1978], *affd* 48 NY2d 885 [1979]; *compare Matter of Adult Home at Erie Sta., Inc. v Assessor & Bd. of Assessment Review of City of Middletown*, 10 NY3d 205, 214 [2008]; *Matter of Association for Neighborhood Rehabilitation, Inc. v Board of Assessors of the City of Ogdensburg*, 81 AD3d at 1216-1217). The "critical factor" in ascertaining whether an exemption may be granted (or here, withdrawn) under RPTL 420-a is "whether the provider

---

**2.** Although these terms are not defined in the statute, "exclusively" has been interpreted to mean principally or primarily (*see Matter of Association for Neighborhood Rehabilitation, Inc. v Board of Assessors of the City of Ogdensburg*, 81 AD3d 1214, 1216 [2011]; *Matter of Miriam Osborn Mem. Home Assn. v Assessor of City of Rye*, 80 AD3d 118, 133 [2010]). Similarly, a "charitable" purpose historically has included "the relief of poverty, the advancement of education, the promotion of health, and even the care and maintenance of abandoned and abused farm animals" (*Matter of Miriam Osborn Mem. Home Assn. v Assessor of City of Rye*, 80 AD3d at 133). However, "[f]or property to be entitled to an exemption on the ground that it is being used for a charitable purpose, it must a fortiori be used for a public purpose" (*Matter of North Manursing Wildlife Sanctuary [City of Rye]*, 48 NY2d 135, 140 [1979]; *Matter of Farm Sanctuary v Patton*, 221 AD3d 67, 69 [1996]).

subsidizes the rentals or charges less than fair market rental rates" (*Matter of TAP, Inc. v Dimitriadis*, 49 AD3d at 948).

Although the record before us does not expressly delineate a range of market rates for comparable facilities, petitioner's own proof establishes that it charges residents between $99 and $155 per day, resulting in a potential annual rental cost of $56,575. The corresponding monthly rental payment is in addition to a one-time reservation fee of $1,500, as well as charges incurred for any supplemental services residents may elect to receive. Additionally, a review of petitioner's rental agreement reflects that it reserves the right to terminate a resident's lease for nonpayment and, between 2006 and 2008, petitioner apparently did not have any residents that received supplemental security income or some other form of governmental subsidy. Thus, even accepting that petitioner offered discounted rates to certain of its residents in 2008 totaling approximately $178,000, there nonetheless was ample evidence from which respondents rationally could conclude that petitioner was not providing housing to low-income individuals and, therefore, was not entitled to the requested exemption. Petitioner's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Spain, J.P., Rose, Lahtinen and Garry, JJ., concur. Ordered that the order is affirmed, without costs.