McCarthy, J.
Appeal from an order of the Supreme Court (Platkin, J.), entered August 7, 2012 in Greene County, which dismissed petitioner’s applications, in three combined proceedings pursuant to RPTL article 7 and CPLR article 78, to review three determinations of the Board of Assessment Review for the Town of Catskill denying petitioner’s applications for real property tax exemptions.
Petitioner is a not-for-profit religious corporation that owns a three-acre parcel of real property in the Town of Catskill, Greene County, which contains, among other things, a three-story, 12-bedroom main house — formerly an inn — as well as a small caretaker’s cottage, several out buildings, a recently constructed outdoor temple and “processional paths.” Petitioner is the corporate entity for the Cybeline Revival, a pagan following founded in 1999, but which has ancient origins. Petitioner’s fundamental religious principle is that the divine feminine, the mother goddess Cybele, is present in everything, thereby creating a connection in all living things, as well as giving rise to an obligation to do charitable work and a responsibility to improve the conditions of all people, particularly women.
In 2009, petitioner, which has received tax-exempt status from the Internal Revenue Service, filed an application for exemption from real property taxes under RPTL 420-a, which was denied by respondent Nancy McCoy, the Assessor of the Town of Catskill. Petitioner filed a grievance and the Board of Assessment Review for the Town of Catskill upheld the assessor’s denial of the exemption. Accordingly, petitioner commenced the first of these proceedings to annul that determination. The second and third proceedings are based on similar denials of tax exemptions in 2010 and 2011. Supreme Court (Pulver Jr., J.) denied respondents’ motion for summary judgment and petitioner’s cross motion for summary judgment. After a nonjury trial on all three petitions, Supreme Court (Platkin, J.) dismissed petitioner’s applications, reasoning that “the property primarily is used to provide affordable cooperative housing to a small number of co-religionists, with the religious and charitable uses of the property being merely incidental to that primary nonexempt use.” Petitioner appeals.
Initially, inasmuch as Supreme Court (Pulver Jr., J.), in effect, *1100 simply determined that genuine issues of fact existed when denying summary judgment and Supreme Court (Platkin, J.), thereafter, made a final determination based on additional proof after trial, the court did not violate the law of the case doctrine (see e.g. Saratoga County Water Auth. v Gibeault, 103 AD3d 1017, 1018-1019 [2013]).
A “taxpayer seeking a real property tax exemption bears the burden of proof [as] tax exemption statutes are strictly construed against the property owner” (Matter of Ahavas Chaverim Gemilas Chesed, Inc. v Town of Mamakating, 99 AD3d 1156, 1157 [2012] [internal quotation marks and citations omitted]; accord Matter of World Buddhist Ch’An Jing Ctr., Inc. v Schoeberl, 45 AD3d 947, 948-949 [2007]). The exemption, however, must “not be so narrowly interpreted as to defeat [its] settled purpose to encourage, foster and protect religious institutions as a public benefit” (Matter of Legion of Christ v Town of Mount Pleasant, 1 NY3d 406, 412 [2004]; see Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg, 79 NY2d 244, 249 [1992]; see generally People ex rel. Watchtower Bible & Tract Socy. v Haring, 8 NY2d 350, 356-358 [I960]). RPTL 420-a (1) (a) provides, in pertinent part, that “[r]eal property owned by a corporation or association organized or conducted exclusively for religious [or] charitable . . . purposes, . . . and used exclusively for carrying out thereupon . . . such purposes [,] . . . shall be exempt from [real property] taxation” (accord Matter of Adult Home at Erie Sta., Inc. v Assessor & Bd. of Assessment Review of City of Middletown, 10 NY3d 205, 213 [2008]). “[T]o qualify for the ‘exemption, (1) [petitioner] must be organized exclusively for [the] purposes enumerated in the statute, (2) the property in question must be used primarily for the furtherance of such purposes, ... (3) no pecuniary profit, apart from reasonable compensation, may inure to the benefit of any officers, members, or employees, and (4) [petitioner] may not be simply used as a guise for profit-making operations’ ” (Matter of Paws Unlimited Found., Inc. v Maloney, 91 AD3d 1173, 1173-1174 [2012], quoting Matter of Miriam Osborn Mem. Home Assn. v Assessor of City of Rye, 275 AD2d 714, 715 [2000]; accord Matter of Pine Harbour, Inc. v Dowling, 89 AD3d 1192, 1193 [2011]).
At issue here is only the second element, whether the property is primarily used for religious or charitable purposes. With respect to that element, property uses that are “merely auxiliary or incidental to the main and exempt purpose and use will not defeat the exemption” (Matter of Brooklyn Assembly Halls of Jehovah’s Witnesses, Inc. v Department of Envtl. Protection of City of N.Y., 11 NY3d 327, 335 [2008] [internal quotation marks *1101 and citations omitted]; accord Matter of Ellis Hosp. v Assessor of City of Schenectady, 288 AD2d 581, 582 [2001]).
Petitioner offered testimony from four women affiliated with the property, along with numerous exhibits, whereas respondents offered no witnesses and relied on cross-examination and exhibits. In 2002, Cathryn Platine, the head of the Cybeline Revival and a founder of the faith, purchased the property along with three other women with a goal of establishing affordable housing for transsexual women, and they established a not-for-profit corporation to manage the property. Three of the owners were members of the religion and began practicing it on the property, leading the other owner to sell her interest, in 2004, to another individual who was a Cybeline adherent. At that time, the owners dedicated the property as the home of the religion, transferred title to petitioner and held a formal ceremony dedicating the property to the Mother Goddess. The religion had seven priestesses, most of whom had bedrooms in the main building of the property, as the testimony stressed that convent-style living is a component of the Cybeline Revival. Each priestess’s personal room had an altar, along with a main altar on the main floor of the building. Platine and one other priestess lived there full time, along with a novitiate (basically a priestess-in-training), a woman who was seeking asylum in this country and another guest temporarily residing there on a charitable basis. Further, the testimony established that from 2009 to 2011 between 8 to 10 other charitable guests and about four “spiritual seekers” resided temporarily on the property, with no guests being required to pay for their stay and with little actual financial support provided by guests.
With respect to petitioner’s activities on the property, Platine testified that evening praise is conducted nightly at the altar in the main house’s “sitting room,” new moon and full moon celebrations are conducted “approximately every two weeks” outdoors on the processional paths and in the outdoor temple area, and “entire weekend[s] of activities” are held to celebrate the equinoxes and solstices. The property is also used for certain rituals pertaining to marriage and death, and celebrations pertaining to physical changes in a woman’s lifetime. Platine also testified that she provides religious instruction and spiritual counseling on the property, although Supreme Court found her estimate of 30 hours per week devoted to counseling to be incredible. Other public activities on the property include participation in an annual pagan pride festival, “The All Woman Festival,” “a weekend event where women, primarily pagans, . . . come . . together [to] shar[e] sisterhood,” as well as a *1102 weekly open cafe, a monthly pagan brunch and a monthly, more secular, bisexual brunch. These activities take place throughout the main building and in the outdoor temple, two other outdoor areas and along the processional paths, plus some counseling and instruction take place in the caretaker’s cottage.
Considering the testimony, petitioner met its burden to demonstrate that it uses the property primarily for its religious and charitable purposes (compare Matter of St. Agnes Church v Daby, 148 AD2d 31, 33-34 [1989]). In accord with Supreme Court’s determination, respondents contend that the property was used primarily to provide cooperative housing because, in essence, the few adherents of the Cybeline Revival have in effect just continued the property’s former residential use, as evidenced by the financial support coming from these few adherents and by the “friends of friends” guests. However, these arguments contend that there is some threshold amount of activity and public benefit that must be demonstrated, which confuses the standard that is simply whether the property was used primarily for religious and charitable purposes (see Matter of Association of Bar of City of N.Y. v Lewisohn, 34 NY2d 143, 154 [1974]). The testimony established that the Cybeline Revival stresses communal living among its adherents, as well as providing hospitality and charity to those in need, and the members consider this property the home of their faith (see Matter of Merry-Go-Round Playhouse, Inc. v Assessor of City of Auburn, 104 AD3d 1294, 1297 [2013], lo granted 22 NY3d 854 [2013]). They also conduct religious and charitable activities throughout the property on a regular basis. Accordingly, petitioner has satisfied the legal requirements in order to receive a real property tax exemption for 2009, 2010 and 2011 (see Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg, 79 NY2d 244, 252 [1992]; Matter of Eternal Flame of Hope Ministries, Inc. v King, 76 AD3d 775, 778 [2010], affd 16 NY3d 778 [2011]; Sephardic Congregation of S. Monsey v Town of Ramapo, 47 AD3d 915, 916-918 [2008]).
Lahtinen, J.E, Spain and Egan Jr., JJ., concur. Ordered that the order is reversed, on the law, with costs, petitions granted, and determinations of the Board of Assessment Review for the Town of Catskill denying petitioner’s applications for real property tax exemptions for 2009, 2010 and 2011 annulled.