=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 201
In the Matter of Merry-Go-Round
Playhouse, Inc.,
            Respondent,
        v.
Assessor of City of Auburn, et
al.,
            Appellants.

            Andrew S. Fusco, for appellants.
            Charles H. Lynch, Jr., for respondent.
            Association of Towns of the State of New York et al.,
amici curiae.

LIPPMAN, Chief Judge:

            The issue presented by this appeal is whether certain

real property owned by petitioner Merry-Go-Round Playhouse, a

not-for-profit theater corporation, and used to house its staff

and summer stock actors, is exempt from taxation under RPTL 420-

- 1 -

a.  We hold that Merry-Go-Round has established its entitlement to the tax exemption.

Merry-Go-Round was initially established in 1958 as the Auburn Children's Theater and was incorporated as a not-for-profit corporation in 1972.[*]  Petitioner currently operates two theaters -- a professional summer stock theater that puts on large scale musicals in the City of Auburn, and a year-round youth theater that tours New York State during the academic year, performing about ten different productions for various school districts.  According to its articles of incorporation, Merry-Go-Round was formed for the purposes of "augment[ing] the speech and drama training of Auburn area children[;] . . . present[ing] theater as the showcase for all the arts; . . . conduct[ing] year round programs in the performing arts for children, teenagers and adults" and "any other act or thing incidental to or connected with the foregoing purposes or in advancement thereof."

In order to hire qualified actors and staff, Merry-Go-Round recruits candidates from around the country.  Petitioner has traditionally provided housing for many of its summer actors and staff to help compensate them for their relatively low salaries and the temporary nature of their employment.  In the past, the organization had leased apartments for its employees through various local landlords, but as its operation grew, that

_____

[*] The certificate of incorporation was amended in 1985 to change the corporate name to the current Merry-Go-Round Playhouse, Inc.

process became unwieldy.

In 2011, Merry-Go-Round purchased the two apartment buildings at issue -- one building is comprised of 14 units and the other of 16 units. The apartments are only for Merry-Go-Round's actors and staff. They are not open to the public and Merry-Go-Round does not derive any income from the properties. In addition to reducing the burden of obtaining individual housing for each staff member, petitioner maintains that the living arrangement has "aided in cultivating a community among its artists" and that the actors and other staff "spend countless volunteer hours, off-stage and off-the-clock, running lines together, discussing creative ideas, working on wardrobes, creating sets and working in the furtherance of the purposes and mission of Merry-Go-Round."

Soon after purchasing the properties, petitioner filed applications for real property tax exemptions with respondent assessor. The applications were denied and the denials were upheld by the City of Auburn's Board of Assessment Review. Petitioner then commenced this RPTL article 7 proceeding for review of its tax assessments.

Supreme Court granted respondents' motion and denied petitioner's cross motion for summary judgment, finding that Merry-Go-Round was not entitled to the exemption. The court determined that petitioner had failed to establish both that its summer theater was an exempt purpose under the statute and that

the use of the apartment buildings to house its employees was reasonably incidental to its primary purpose.

The Appellate Division reversed and granted the petition insofar as it sought the tax exemptions (104 AD3d 1294 [3d Dept 2013]).  The Court found that petitioner was clearly organized exclusively for a tax exempt purpose -- showcasing and encouraging appreciation of the performing arts, thereby advancing the education, as well as the moral and mental improvement of, the community.  The Court further determined that petitioner had demonstrated that its use of the properties was reasonably incidental to its primary purpose, in that it helped to establish a community among its artists, and that respondents had failed to raise an issue of fact in opposition to defeat summary judgment.  We granted respondents leave to appeal and now affirm.

Under the Real Property Tax Law, "[r]eal property owned by a corporation or association organized or conducted exclusively for religious, charitable, hospital, educational, or moral or mental improvement of men, women or children purposes . . . and used exclusively for carrying out thereupon one or more of such purposes . . . shall be exempt from taxation as provided in this section" (RPTL 420-a [1] [a]).  The burden of establishing that the property is entitled to a tax exemption rests with the taxpayer (see Matter of Lackawanna Community Dev. Corp. v Krakowski, 12 NY3d 578, 581 [2009]).

Here, it is clear that petitioner is organized exclusively for an exempt purpose, in that it is intended to promote appreciation for the arts/musical theater, thereby providing education to the community and advancing the moral or mental improvement of area residents.  The summer stock theater does not have the same educational component as the youth theater, but is similarly geared toward promoting the arts.  In addition, although the summer stock theater charges admission, that bare fact cannot nullify petitioner's tax exempt purpose. We have previously observed that "[a] 'commercial patina' alone is not enough to defeat tax-exempt status" (Matter of Symphony Space v Tishelman, 60 NY2d 33, 38-39 [1983]).  Merry-Go-Round asserts without contradiction that the theater generally either breaks even or operates at a loss.  There is no indication that petitioner is organized for the purpose of making a profit and this limited commercial aspect does not preclude it from receiving a tax exemption.

We must then determine whether the property is being used exclusively for an exempt purpose.  "The test of entitlement to tax exemption under the used exclusively clause of the statute is whether the particular use is reasonably incidental to the primary or major purpose of the facility.  Put differently, the determination of whether the property is used exclusively for the statutory purposes depends upon whether its primary use is in furtherance of the permitted purposes" (Matter of Yeshivath

Shearith Hapletah v Assessor of Town of Fallsburg, 79 NY2d 244,
250 [1992] [internal punctuation and citations omitted]).

　　　　In a case comparable to this one, we held that a
partial tax exemption was warranted for the portions of 10
apartment buildings that were owned by St. Luke's Hospital and
occupied by its staff and their families (see Matter of St.
Luke's Hosp. v Boyland, 12 NY2d 135 [1962]).  We found that the
use of the apartments was reasonably incident to the hospital's
major purpose, recognizing that it was customary for hospitals to
provide such living arrangements and that some of its staff would
have sought employment elsewhere if housing had not been made
available (see St. Luke's, 12 NY2d at 143).  We further observed
that tax exemptions had similarly been granted to colleges and
universities for real property used to house faculty members (see
St. Luke's, 12 NY2d at 143-144, citing People ex rel. Thomas S.
Clarkson Mem. Coll. of Tech. v Haggett, 300 NY 595 [1949]).

　　　　More recently, in Yeshivath, we addressed whether 31
acres of real property owned by a not-for-profit religious
corporation and used for religious instruction during the summer
months were exempt from taxation under RPTL 420-a.  The property
at issue included religious and educational facilities, housing
accommodations and 10 acres of woodland, which the students used
for hiking.  There, we determined that the housing facilities
provided to its faculty and staff, as well as to the students and
their families, were "'necessary and reasonably incidental' to

the primary purpose of" the property and that, without it, the "primary purpose[] of providing rigorous religious and educational instruction at the yeshivah would be seriously undermined" (Yeshivath, 79 NY2d at 251).

Likewise, here, the primary use of the apartment buildings is in furtherance of Merry-Go-Round's primary purpose. Petitioner established that the housing is used to attract talent that would otherwise look to other theaters for employment, that the living arrangement fosters a sense of community and that the staff spends a significant portion of its off-hours in furtherance of theater-related pursuits. In addition, similar to the situation presented by St. Luke's, the record shows that petitioner would have difficulty recruiting qualified staff if it did not provide the housing, which would undermine its primary purpose. Although we have not previously addressed the provision of tax exempt housing in relation to an arts organization, the statute does not elevate one exempt purpose over another. Under these circumstances, the use of the property to provide staff housing is reasonably incidental to petitioner's primary purpose of encouraging appreciation of the arts through theater. Petitioner has demonstrated that it is entitled to an RPTL 420-a tax exemption and respondent failed to raise a material issue of fact warranting a trial.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed, with costs.  Opinion by Chief Judge Lippman.
Judges Graffeo, Read, Smith, Pigott, Rivera and Abdus-Salaam
concur.

Decided November 18, 2014