Matter of Harrison Orthodox Minyan, Inc. v Town/Village of Harrison (2025 NY Slip Op 01634)

Matter of Harrison Orthodox Minyan, Inc. v Town/Village of Harrison

2025 NY Slip Op 01634

Decided on March 19, 2025

Appellate Division, Second Department

Ventura, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 19, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
ROBERT J. MILLER
HELEN VOUTSINAS
LOURDES M. VENTURA, JJ.

2020-09770
 (Index Nos. 67431/15, 67103/19)

[*1]In the Matter of Harrison Orthodox Minyan, Inc., etc., appellant, 
v
Town/Village of Harrison, etc., et al., respondents; Harrison Central School District, intervenor-respondent.

APPEAL by the petitioner, in two related proceedings pursuant to Real Property Tax Law article 7 to review real property tax assessments for the 2015 and 2019 tax years, from an order and judgment (one paper) of the Supreme Court (Bruce E. Tolbert, J.), dated November 12, 2020, and entered in Westchester County. The order and judgment denied the petitioner's motion for summary judgment on the petition related to the 2015 tax year, in effect, granted that branch of the cross-motion of the respondents and the intervenor-respondent which was for summary judgment dismissing the petition related to the 2015 tax year to the extent of determining that the petitioner was not entitled to a tax exemption pursuant to RPTL 420-a for the 2015 tax year, granted that branch of the cross-motion of the respondents and the intervenor-respondent which was for summary judgment dismissing the petition related to the 2019 tax year, and dismissed the proceeding related to the 2019 tax year.

Nelson Madden Black LLP New York, NY (Barry Black of counsel), for appellant.
Ira S. Levy, Rye Brook, NY, for respondents; Keane & Beane, P.C., White Plains, NY (Judson K. Siebert of counsel), for intervenor-respondent (one brief filed).

VENTURA, J.

OPINION & ORDER
This appeal provides this Court with an opportunity to clarify the standards courts should consider when deciding whether a covered not-for-profit corporation is entitled to a full tax exemption pursuant to RPTL 420-a for property allegedly utilized primarily in furtherance of exempt purposes. The circumstances presented here involve an Orthodox Jewish religious corporation seeking an exemption for a residential property used, inter alia, to house its Torah reader and his family. For the reasons set forth below, we conclude, among other things, that the petitioner demonstrated that the subject property was used primarily in furtherance of its religious purposes during the 2015 tax year. Therefore, the Supreme Court should have granted the petitioner's motion for summary judgment on the petition to review the real property tax assessment for that year.
I. Background of the Related Proceedings
Since these related proceedings involve a religious organization seeking tax exemptions concerning its religious practices and beliefs, we begin by addressing those practices and beliefs which are of particular relevance here. For example, although "[t]he word 'Torah' can mean different things in different contexts" (Love v New Jersey Dept. of Corr., 2011 WL 345964, *6 n 16, [*2]2011 US Dist LEXIS 10102, *25 n 16 [D NJ, Jan. 31, 2011, No. 10-1714 (GEB)]), it often refers to a collection of "sacred religious scrolls . . . contain[ing] the Five Books of Moses," which "embod[y] the foundation of Jewish law," or halacha (Laitman v Laitman, 125 Misc 2d 694, 695 [Fam Ct, Rockland County]; see Yan v Gonzales, 438 F3d 1249, 1254 [10th Cir]). During synagogue services, a Torah reader, or baal keriah, recites predetermined portions of the Torah to the congregation (see Midrash Sephardi, Inc. v Town of Surfside, 366 F3d 1214, 1221 [11th Cir]; Roberta Rosenthal Kwall, The Cultural Analysis Paradigm: Women and Synagogue Ritual as a Case Study, 34 Cardozo L Rev 609, 613-614 [2012]; Ronald L. Eisenberg, Jewish Traditions: A JPS Guide, 450-452 [2004]). Such services occur, among other instances, "on the weekly Sabbath and religious holidays" (Cambridge Christian Sch., Inc. v Florida High Sch. Athletic Assn., Inc., 942 F3d 1215, 1248 [11th Cir] [internal quotation marks omitted]). Moreover, in Orthodox Judaism, "[d]aily prayer is required" (LeBlanc-Sternberg v Fletcher, 67 F3d 412, 417 [2d Cir]). Orthodox Jews are also forbidden from "us[ing] cars or other means of transportation during the weekly Sabbath and religious holidays" (Midrash Sephardi, Inc. v Town of Surfside, 366 F3d at 1221; see LeBlanc-Sternberg v Fletcher, 67 F3d at 417; Ronald L. Eisenberg at 134-135). As a result, they generally "must live within walking distance of a synagogue" (Boyajian v Gatzunis, 212 F3d 1, 10 [1st Cir]).
The petitioner, Harrison Orthodox Minyan, Inc., is a religious not-for-profit corporation which operates a modern Orthodox Jewish synagogue on Union Avenue in Harrison (hereinafter the synagogue). For more than two decades, nonparty Efraim Marcus has served as the synagogue's Torah reader, while also leading its prayer services. In or about 2014, a member of the congregation purchased a residential property on Ramapo Circle in Harrison (hereinafter the property), located within walking distance of the synagogue, and donated it to the petitioner. The petitioner then permitted Marcus to reside at the property with his family.
In April 2015, the petitioner submitted an application to the Assessor of the Town/Village of Harrison (hereinafter the assessor) for a tax exemption on the property pursuant to RPTL 420-a for the 2015 tax year. The following month, the assessor denied the application on the ground that "[t]he property [wa]s not being used for an exempt purpose" (emphasis omitted). The petitioner subsequently filed a complaint with the Board of Assessment Review of the Town/Village of Harrison (hereinafter the board), asserting, inter alia, that the property was exempt from taxation because it was "used principally and primarily for carrying out the [petitioner's] religious purposes." The board, however, agreed with the assessor and denied the tax exemption application.
In October 2015, the petitioner commenced a proceeding pursuant to Real Property Tax Law article 7 against the assessor, the board, and the Town/Village of Harrison (hereinafter collectively the Harrison respondents) to review the real property tax assessment of the property for the 2015 tax year. The Harrison Central School District (hereinafter the district) thereafter intervened in that proceeding. In October 2019, the petitioner commenced another proceeding against the Harrison respondents to review the real property tax assessment of the property for the 2019 tax year. The petitions in each proceeding alleged that the property was exempt from taxation pursuant to RPTL 420-a.
In February 2020, the petitioner moved for summary judgment on the petition related to the 2015 tax year (hereinafter the 2015 petition). In support of its motion, the petitioner submitted affirmations from the synagogue's president and affidavits from its longtime rabbi, the congregation member who donated the property to the petitioner, and Marcus, the Torah reader. Those affirmations and affidavits collectively established that the rabbi initially utilized a rotating group of college students to read the Torah during worship services. In or about 1999, the rabbi learned that Marcus, who was "professionally trained" as a Torah reader, was available. Shortly thereafter, Marcus "became the congregation's regular Torah reader." As a result, Marcus "play[ed] an active role in all religious services and rites . . . occur[ing] at the [s]ynagogue," and his duties included reading the "designated portion of the Torah" thereat "on Mondays, Thursdays, Saturday mornings and afternoons," and on various Jewish holy days.
The affirmations and affidavits submitted by the petitioner further demonstrated that Marcus initially resided outside of Harrison and traveled thereto for the synagogue's services, staying in the rabbi's home as needed. In or about 2005, following the birth of his first child, Marcus moved with his family to Harrison and resided in an apartment rented by the petitioner, which was located more than a mile from the synagogue. Following the birth of his third child in 2014, Marcus determined that it was "implausible for [him] to continue to serve as [the synagogue's] Torah [*3][r]eader while living so far away," citing the "challenges" created by his need to be present at the synagogue and his concurrent inability, based on his religious beliefs, to drive to the synagogue on the Sabbath and Jewish holidays. After learning that Marcus required housing within walking distance of the synagogue in order to remain on as Torah reader, one of the members of the congregation purchased the property, located .2 miles from the synagogue, and donated it to the petitioner. Beyond its use as a residence for Marcus and his family, the affirmations and affidavits submitted by the petitioner established that the property was also utilized to tutor members of the congregation and to hold various religious events.
Based on these facts, the petitioner argued, among other things, that the property was exempt, even though it was Marcus's residence, because it was nonetheless used primarily in furtherance of the petitioner's religious purposes. According to the petitioner, Marcus's use of the property as his residence served to "satisfy [his] indispensable function of reading from the Torah at worship services." The petitioner also asserted that the use of the property for other reasons, including to hold various events and for tutoring students, aided in establishing that it was used in furtherance of exempt purposes.
The Harrison respondents and the district (hereinafter collectively the respondents) opposed the petitioner's motion and cross-moved for summary judgment dismissing the 2015 petition and the petition related to the 2019 tax year (hereinafter the 2019 petition). The respondents did not submit affirmations or affidavits from anyone with personal knowledge on the matters discussed in the affirmations and affidavits submitted by the petitioner in an attempt to raise a triable issue of fact on those matters. Instead, the respondents offered only an affirmation from an attorney for the Town/Village, who provided an overview of the results of internet searches he conducted relating to the property and the petitioner. Nor did the respondents assert that discovery was required in order to determine the validity of any of the petitioner's factual assertions or to otherwise obtain evidence regarding any relevant facts (see CPLR 408; Matter of Cuzson Assoc. v Village of Spring Val., 221 AD3d 896, 896-897; Matter of Church Aid of the Prot. Episcopal Church in the Town of Saratoga Springs, Inc. v Town of Malta Assessor, 125 AD3d 1218, 1218-1219). The respondents nonetheless argued, inter alia, that taxpayers should not be required to pay the expense of the petitioner's "choice" to "accommodate" Marcus's desire to reside closer to the synagogue than his prior residence. Since the property was used primarily, if not exclusively, as Marcus's residence, the respondents asserted that the property's use could not be deemed primarily religious, as opposed to residential.
By order and judgment dated November 12, 2020, the Supreme Court denied the petitioner's motion, in effect, granted that branch of the respondents' cross-motion which was for summary judgment dismissing the 2015 petition to the extent of determining that the petitioner was not entitled to a tax exemption pursuant to RPTL 420-a for the 2015 tax year, granted that branch of the respondents' cross-motion which was for summary judgment dismissing the 2019 petition, and dismissed the 2019 petition. The court concluded, among other things, that the property was not "intimately related to the [petitioner's] religious objectives." The court not only questioned whether it was necessary for the petitioner to provide Marcus with a residence, but also expressed doubts about whether it was even necessary for the petitioner to employ a distinct Torah reader at all, as opposed to having "other people" read from the religious scrolls during services. The court reasoned that taxpayers should not be "expected" to pay property taxes on the property merely because a member of the synagogue's congregation had "genero[usly]" decided to provide Marcus with a home.
The petitioner appeals.
II. Overview of RPTL 420-a
"New York has a long-standing public policy of exempting real property owned by certain not-for-profit entities" from taxation in order "to encourage and foster legislatively favored, publicly beneficial services and operations" (Matter of Brookdale Physicians' Dialysis Assoc., Inc. v Department of Fin. of the City of N.Y., 41 NY3d 608, 611). "[F]rom an early day," lawmakers deemed "the religious, moral[,] and intellectual culture afforded by" such organizations "beneficial to the public, [and] necessary to [both] the advancement of civilization . . . and the promotion of the welfare of society," thereby warranting "relie[f] from the burden of taxation" (People ex rel. Watchtower Bible & Tract Socy. v Haring, 8 NY2d 350, 357 [internal quotation marks omitted]; see Walz v Tax Comm'n of City of New York, 397 US 664, 672-673). Stated otherwise, this state has [*4]"declared a policy that" certain institutions, such as "churches and schools[,] are more important than local taxes, and that it is in furtherance of the general welfare to exclude such institutions from taxation" (Matter of Diocese of Rochester v Planning Bd. of Town of Brighton, 1 NY2d 508, 524-525; see Matter of PACER, Inc. v Planning Bd. of City of Middletown, 217 AD2d 47, 52). Laws codifying this public policy existed in New York as far back as 1799 (see Walz v Tax Comm'n of City of New York, 397 US at 682 n 3 [Brennan, J., concurring]; Sisters of St. Joseph v City of New York, 49 NY2d 429, 437).
Today, "[b]oth the New York Constitution and the RPTL provide exemptions from taxation for real property used for religious, educational[,] or charitable purposes" (Matter of Merry-Go-Round Playhouse, Inc. v Assessor of City of Auburn, 104 AD3d 1294, 1295, affd 24 NY3d 362; see Walz v Tax Commn. of City of New York, 24 NY2d 30, 30-31, affd 397 US 664). "The . . . Constitution provides an absolute exemption for real property 'used exclusively for religious, educational[,] or charitable purposes as defined by law and owned by any corporation or association organized or conducted exclusively for one or more of such purposes and not operating for profit'" (Matter of Merry-Go-Round Playhouse, Inc. v Assessor of City of Auburn, 104 AD3d at 1295, quoting NY Const, art 16, § 1; see Sisters of St. Joseph v City of New York, 49 NY2d at 442). RPTL 420-a codifies this constitutional mandate (see id.; Walz v Tax Comm'n of City of N.Y., 397 US at 667 n 1; Matter of Legion of Christ v Town of Mount Pleasant, 1 NY3d 406, 411). Specifically, the statute "provides a . . . tax exemption for, inter alia, real property owned by corporations organized or conducted exclusively for [exempt] purposes and used exclusively for carrying out such purposes" (Matter of Ohr Menachem of Great Neck, Inc. v Board of Assessors, 48 AD3d 688, 689).
"The term 'exclusively,' in the context of RPTL 420-a, is not to be read literally" (Matter of Greentree Found. v Assessor & Bd. of Assessors of County of Nassau, 142 AD3d 665, 667 [internal quotation marks omitted]). Instead, the term "has been broadly defined as principally or primarily, such that purposes and uses merely auxiliary or incidental to the main and exempt purpose and use will not defeat the exemption" (Matter of Rye Country Day Sch. v Whitty, 212 AD3d 819, 821 [citation and internal quotation marks omitted]; see Matter of Brookdale Physicians' Dialysis Assoc., Inc. v Department of Fin. of the City of N.Y., 41 NY3d at 611). In other words, "those uses which serve as an embellishment or adjunct to the successful maintenance and development of the whole project will not destroy the exemption" (Gospel Volunteers v Village of Speculator, 29 NY2d 622, 625 [Scileppi, J., dissenting] [citation and internal quotation marks omitted]).
"Thus, there is a two-part test to determining entitlement to a property tax exemption: (1) whether the owner of the property is organized or conducted exclusively, or primarily, for an exempt purpose; and (2) whether the particular property for which the exemption is sought is itself primarily used for an exempt purpose" (Matter of International Student Exch., Inc. v Assessors Off. of the Town of Islip, 185 AD3d 815, 817). "The burden of establishing that the property is entitled to a tax exemption" pursuant to RPTL 420-a "rests with the taxpayer" (Matter of Merry-Go-Round Playhouse, Inc. v Assessor of City of Auburn, 24 NY3d at 367), unless "the taxing authority seeks to withdraw a tax exemption that was afforded in previous years" (Matter of St. Francis Hosp. v Taber, 76 AD3d 635, 639). "The exemption, however, must 'not be so narrowly interpreted as to defeat [its] settled purpose to encourage, foster[,] and protect religious institutions as a public benefit'" (Matter of Maetreum of Cybele, Magna Mater, Inc. v McCoy, 111 AD3d 1098, 1100, affd 24 NY3d 1023, quoting Matter of Legion of Christ, Inc. v Town of Mount Pleasant, 1 NY3d at 412). "Additionally, when a taxpayer in a tax certiorari proceeding seeks summary judgment, it is necessary that the [taxpayer] establish his [or her] cause of action or defense sufficiently to warrant the court as a matter of law in directing judgment in his [or her] favor . . . , and [the taxpayer] must do so by tender of evidentiary proof in admissible form" (Matter of Crouse Health Sys., Inc. v City of Syracuse, 126 AD3d 1336, 1337 [internal quotation marks omitted]).
III. Residential Properties May Be Exempt From Taxation Pursuant to RPTL 420-a
"New York has long recognized that residential property used for housing [a covered] institution's . . . staff [may be] entitled to a tax exemption under RPTL 420-a or similar statute[s]" (Matter of Rye Country Day Sch. v Whitty, 212 AD3d at 821; see Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg, 79 NY2d 244, 250; Matter of Shrine of Our Lady of Martyrs of Auriesville v Board of Assessors of Town of Glen, 40 AD2d 75, 76, affd 33 NY2d 713). Indeed, "housing can qualify as an exempt use under RPTL 420-a where it is in furtherance of the [*5]property owner's exempt purpose" (Matter of Global Leadership Found. v Commissioner of Fin. of the City of N.Y., 217 AD3d 408, 409). "The test . . . is whether" residential property owned by a covered institution and "occupied by [its] personnel and their immediate families [is] devoted to a use which is reasonably incident[al] to the major purpose of the [institution]" (Matter of St. Luke's Hosp. v Boyland, 12 NY2d 135, 143 [internal quotation marks omitted]; see Matter of Adult Home at Erie Sta., Inc. v Assessor & Bd. of Assessment Review of City of Middletown, 10 NY3d 205, 216). Therefore, so long as this test is otherwise satisfied, an institution may not be denied an exemption, for example, merely because a residential building housing its staff is located some distance "from the building in which [its] primary educational or religious work [i]s done," as opposed to located on the same property or adjacent thereto (People ex rel. Watchtower Bible & Tract Socy. v Haring, 8 NY2d at 356; see Matter of St. Joseph's Health Ctr. Props. v Srogi, 51 NY2d 127, 131; Matter of St. Luke's Hosp. v Boyland, 12 NY2d at 144)
In Matter of St. Luke's Hosp. v Boyland (12 NY2d 135), the Court of Appeals "considered a predecessor to RPTL 420-a in the Tax Law in a case that involved a not-for-profit hospital's lease of its private apartments to hospital staff and family" (Matter of Brookdale Physicians' Dialysis Assoc., Inc. v Department of Fin. of the City of N.Y., 41 NY3d at 619; see Matter of St. Joseph's Health Ctr. Props. v Srogi, 51 NY2d at 131). The apartments were located in buildings that were "in close proximity to the hospital" but "across the street" from it (Matter of St. Luke's Hosp. v Boyland, 12 NY2d at 141). In considering whether the hospital was entitled to an exemption, the Court "noted that it was customary for hospitals to provide living accommodations for at least some employees" (Matter of Adult Home at Erie Sta., Inc. v Assessor & Bd. of Assessment Review of City of Middletown, 10 NY3d at 216; see Matter of St. Luke's Hosp. v Boyland, 12 NY2d at 143). Ultimately, "[t]he Court concluded that renting the apartments for profit was reasonably incident[al] to the hospital's major purpose because the rentals facilitated the hospital's objectives of recruiting and training interns, residents and nurses, who were in short supply" and who testified that they would have worked elsewhere had the hospital not supplied them with housing (Matter of Brookdale Physicians' Dialysis Assoc., Inc. v Department of Fin. of the City of N.Y., 41 NY3d at 619 [internal quotation marks omitted], citing Matter of St. Luke's Hosp. v Boyland, 12 NY2d at 142-143).
Thereafter, in Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg (79 NY2d 244), the Court of Appeals considered whether "a not-for-profit religious corporation whose primary purpose [wa]s the teaching of the principles and doctrines of the Jewish faith" was entitled to a tax exemption (id. at 247). Specifically, the Court "addressed whether 31 acres of real property owned by [the] corporation and used for religious instruction during the summer months were exempt from taxation under RPTL 420-a," where "[t]he property . . . included religious and educational facilities, housing accommodations[,] and 10 acres of woodland, which the students used for hiking" (Matter of Merry-Go-Round Playhouse, Inc. v Assessor of City of Auburn, 24 NY3d at 368). The Court determined that the corporation was entitled to an exemption, since "the housing facilities provided to its faculty and staff, as well as to the students and their families, were 'necessary and reasonably incidental to the primary purpose of' the property and that, without them, the 'primary purpose[ ] of providing rigorous religious and educational instruction . . . would be seriously undermined'" (id., quoting Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg, 79 NY2d at 251 [internal quotation marks omitted]). Similarly, the Court concluded that the corporation was entitled to an exemption for so much of the property that contained a "trailer occupied by [a] caretaker . . . year-round" (Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg, 79 NY2d at 251). Since the caretaker's "full-time job [wa]s to maintain the premises during the summer months and to keep the property secure during the remaining months of the year," the Court reasoned that "the use of the residence [wa]s clearly incidental to the maintenance of the [overall] facility which," in turn, "serve[d] the religious purposes for which [the] corporation was organized" (id.).
More recently, in Matter of Merry-Go-Round Playhouse, Inc. v Assessor of City of Auburn (24 NY3d 362), the Court of Appeals considered "whether certain real property owned by . . . a not-for-profit theater corporation, and used to house its staff and summer stock actors, [wa]s exempt from taxation under RPTL 420-a" (id. at 365). In reaching its decision, the Court noted that the theater corporation, "[i]n order to hire qualified actors and staff, . . . recruit[ed] candidates from around the country" and "traditionally provided housing for many of its summer actors and staff to help compensate them for their relatively low salaries and the temporary nature of their employment" [*6](id. at 366). Although the corporation had previously "leased apartments for its employees through various local landlords, . . . that process became unwieldy" "as [the] operation grew," prompting the corporation to purchase "two apartment buildings" housing only its "actors and staff" (id.). The Court determined that "the primary use of the apartment buildings [wa]s in furtherance of [the theater corporation's] primary purpose," noting "that the housing [wa]s used to attract talent that would otherwise look to other theaters for employment, that the living arrangement foster[ed] a sense of community[,] and that the staff spen[t] a significant portion of its off-hours in furtherance of theater-related pursuits" (id. at 368; see Matter of Greater Jamaica Dev. Corp. v New York City Tax Commn., 25 NY3d 614, 630).
Finally, in Sephardic Congregation of S. Monsey v Town of Ramapo (47 AD3d 915), a religious corporation owned a property containing a three-floor building, which included "its synagogue on the ground floor and a residence for . . . its sole [r]abbi . . . and his family on the second and third floors" (id. at 916). The corporation sought "a full tax exemption for the premises for the 2004 tax year" and the trial court affirmed the tax assessor's denial thereof (id.). On appeal, this Court reversed, concluding that "the residential use of the . . . premises [wa]s necessary and reasonably incidental to furthering the [corporation's] primary exempt purpose" (id. at 917-918). In reaching that determination, this Court noted, among other things, that the rabbi testified "that he devote[d] 40 to 45 hours per week to" his synagogue-related work, "which include[d] conducting services twice a day on most days, teaching classes, counseling and meeting with [c]ongregation members, and preparing for lectures and services" (id. at 917).
IV. The Petitioner Established Entitlement to an Exemption Pursuant to RPTL 420-a for the 2015 Tax Year
Here, there is no dispute as to whether the petitioner is organized and conducted primarily for an exempt purpose within the meaning of RPTL 420-a, since it is a religious not-for-profit corporation that operates a synagogue. The sole issue presented is therefore whether the property was "primarily used for an exempt purpose" (Matter of International Student Exch., Inc. v Assessors Off. of the Town of Islip, 185 AD3d at 817).
Contrary to the respondents' contention, the petitioner met its prima facie burden for summary judgment on the 2015 petition (see Matter of Province of Meribah Socy. of Mary v Danziger, 222 AD3d 980, 981). The petitioner's submissions established that its religious purposes include, inter alia, operating a synagogue, conducting Jewish worship thereat, and organizing Jewish people for various events, and that the property was utilized primarily in furtherance of those purposes (see Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg, 79 NY2d at 250-251; Matter of Zen Ctr. of Syracuse, Inc. v Gamage, 94 AD3d 1490, 1491; Sephardic Congregation of S. Monsey v Town of Ramapo, 47 AD3d at 917-918). In other words, the petitioner demonstrated that the property was "devoted to a use which [wa]s reasonably incident[al] to [its] major purpose[s]" (Matter of St. Luke's Hosp. v Boyland, 12 NY2d at 143 [internal quotation marks omitted]).
For example, the affirmations and affidavits submitted in support of the petitioner's motion established that Marcus's role as the synagogue's Torah reader was full-time and similar to an assistant rabbi, even though he was not an ordained member of the clergy (see Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg, 79 NY2d at 251; Temple Beth Sholom, Inc. of Roslyn, N.Y. v Nassau County Dept. of Assessment, 6 Misc 3d 1002[A], 2001 NY Slip Op 50147[U], *4 [Sup Ct, Nassau County]). The petitioner's submissions demonstrated that Marcus was "musically gifted" and that he "hon[ed]" specialized "skill[s]" through "many years" of religious training and experience. Utilizing these skills, Marcus played an active role in religious services occurring at the synagogue multiple times during the week, on the Sabbath, and on Jewish holy days, among other instances, and also spent time preparing for those services. He performed the rabbi's duties when the rabbi was unavailable, while also tutoring congregants on Torah-related matters at the property (see Sephardic Congregation of S. Monsey v Town of Ramapo, 47 AD3d at 917-918). Beyond the use of the property for tutoring congregants, the petitioner established that it conducted other "religious . . . activities [at] the property on a regular basis" (Matter of Maetreum of Cybele, Magna Mater, Inc. v McCoy, 111 AD3d at 1102; see Matter of Merry-Go-Round Playhouse, Inc. v Assessor of City of Auburn, 24 NY3d at 366, 368).
Further, the petitioner's submissions established that it offered Marcus housing within walking distance of the synagogue in order to continue to retain his expert services as a Torah reader, [*7]as his religious beliefs prohibited him from driving to the synagogue on the Sabbath and on Jewish holy days, and he had a growing family which made walking from his prior apartment impractical (see Matter of Merry-Go-Round Playhouse, Inc. v Assessor of City of Auburn, 24 NY3d at 368-369; Matter of St. Luke's Hosp. v Boyland, 12 NY2d at 142-143; Matter of Rye Country Day Sch. v Whitty, 212 AD3d at 822). The petitioner's rabbi also stated that, upon learning that Marcus could not continue in his role as Torah reader without residing closer to the synagogue, "[t]he congregation was unable to identify any qualified Torah [r]eader within walking distance [thereof]." Considering, inter alia, that "[t]he requirement of reading from the Torah" during services "is absolute and cannot be waived," as explained by the rabbi, the petitioner's religious "goal[s]" were "advance[d]" by providing Marcus with housing closer to the synagogue (Matter of Adult Home at Erie Sta., Inc. v Assessor & Bd. of Assessment Review of City of Middletown, 10 NY3d 205, 216; see Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg, 79 NY2d at 251).
This case is plainly distinguishable from Matter of Yehudi v Assessor of Town of Ramapo (109 AD2d 744), where this Court affirmed the denial of an exemption sought by a religious corporation for a residence it provided to a maintenance person and his family (see id. at 744-745). Beyond the distinction between Marcus's role and the maintenance person's role, the circumstances presented here are distinguishable from those in Yehudi because the maintenance person only "devote[d] approximately two or slightly more days" per week "to his employment with" the religious corporation, and he was also "self-employed as a house painter" (id. at 745; see Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg, 79 NY2d at 251).
In opposition to the petitioner's prima facie showing of entitlement to judgment as a matter of law on the 2015 petition, the respondents failed to raise a triable issue of fact (see Matter of Eternal Flame of Hope Ministries, Inc. v King, 76 AD3d 775, 779, affd 16 NY3d 778; Matter of Province of Meribah Socy. of Mary v Danziger, 222 AD3d at 981). Similarly, the respondents failed to meet their prima facie burden on their cross-motion for summary judgment dismissing the petitions on the ground that the property was not used primarily for religious purposes. Contrary to the respondents' contention, the petitioner should not be denied a tax exemption simply because it had previously rented an apartment for Marcus a further distance from the synagogue. Among other reasons, the petitioner explained the circumstances that caused it to locate housing for him closer to the synagogue and how doing so furthered its religious purposes (see Matter of Merry-Go-Round Playhouse, Inc. v Assessor of City of Auburn, 24 NY3d at 366).
V. Additional Issues
Moreover, contrary to the respondents' further contention, the Supreme Court should not have awarded summary judgment to the respondents dismissing the 2019 petition on procedural grounds. A challenge to a taxing authority's denial of a mandatory exemption pursuant to RPTL 420-a may be brought by way of an RPTL article 7 proceeding, a CPLR article 78 proceeding, or a plenary action collaterally attacking the assessment (see RPTL 420-a[11]; Matter of Province of Meribah Socy. of Mary v Danziger, 222 AD3d at 981; Joon Mgt. One Corp. v Town of Ramapo, 142 AD3d 587, 588). Unless the challenge is brought in an RTPL article 7 proceeding, the procedures applicable to such proceedings are inapplicable (see Kahal Bnei Emunim & Talmud Torah Bnei Simon Israel v Town of Fallsburg, 78 NY2d 194, 204-205; Joon Mgt. One Corp. v Town of Ramapo, 142 AD3d at 588; Otrada, Inc. v Assessor, Town of Ramapo, 41 AD3d 678, 680). Therefore, in lieu of dismissing the proceeding related to the 2019 tax year due to the petitioner's failure to comply with certain conditions precedent applicable in the context of RPTL article 7 proceedings, the Supreme Court should have remedied the procedural infirmity by converting that proceeding into a hybrid CPLR article 78 proceeding and action (see CPLR 103[c]; Matter of Greenberg v Assessor of Town of Scarsdale, 121 AD3d 986, 990; Matter of Krugman v Board of Assessors of Vil. of Atl. Beach, 141 AD2d 175, 180). We therefore convert that RPTL article 7 proceeding "into a hybrid proceeding and action, with the notice of petition deemed also to be a summons, and the petition deemed to be the petition/complaint" (Matter of Greenberg v Assessor of Town of Scarsdale, 121 AD3d at 990).
Finally, contrary to the petitioner's contention, it failed to demonstrate its entitlement to tax exemptions for tax years 2016, 2017, and 2018 since, inter alia, the 2015 petition was insufficient to place the respondents on notice that the petitioner sought a tax exemption beyond the tax year (cf. Matter of Wagner & Stoll, LLC v City of Schenectady, 107 AD3d 1225, 1227-1228; Otrada, Inc. v Assessor, Town of Ramapo, 41 AD3d at 680).
Accordingly, the Supreme Court should have granted the petitioner's motion for summary judgment on the 2015 petition and denied the respondents' cross-motion for summary judgment dismissing the petitions.
The parties' remaining contentions either are without merit, are improperly raised for the first time on appeal, or need not be reached in light of our determination.
Accordingly, on the Court's own motion, the proceeding related to the 2019 tax year is converted into a hybrid CPLR article 78 proceeding and action, the notice of petition in that matter is also deemed to be the summons and the petition is deemed to be the petition/complaint (see CPLR 103[c]), the order and judgment is reversed, on the law, the petitioner's motion for summary judgment on the 2015 petition is granted, and the respondents' cross-motion for summary judgment dismissing the petitions is denied.
DILLON, J.P., MILLER and VOUTSINAS, JJ., concur.
ORDERED that on the Court's own motion, the proceeding pursuant to Real Property Tax Law article 7 to review a real property tax assessment for the 2019 tax year is converted into a hybrid CPLR article 78 proceeding and action, the notice of petition in that matter is also deemed to be the summons and the petition is deemed to be the petition/complaint (see CPLR 103[c]); and it is further,
ORDERED that the order and judgment is reversed, on the law, with costs, the petitioner's motion for summary judgment on the petition related to the 2015 tax year is granted and the cross-motion of the respondents and the intervenor-respondent for summary judgment dismissing the petitions is denied.
ENTER:
Darrell M. Joseph
Clerk of the Court